Bell, J.,
 

 dissenting. In January 1942, the Congress of the United States passed as a war measure the Emergency Price Control Act which is found in Title 50, appendix, Sections 901 to 946, both inclusive, United States Code. Section 902 thereof grants authority to the Price Administrator to make regulations and orders in respect to rents. Pursuant thereto the administrator issued certain rent regulations with respect to rates and, except for specified violations of rental agreements, froze residential tenancy.
 

 Section six of one of such regulations provides,
 
 inter alia,
 
 that no tenant shall be evicted unless:..
 

 “3. The tenant * * * has violated a substantial obligation of his tenancy * * * and has continued, or failed to cure, such violation after written notice by the landlord that the violation cease * * *.”
 

 The above regulation was in full force and effect at the time the present action was instituted and of necessity must be considered in its determination. ■
 

 In its petition plaintiff (appellant here), recognizing such regulation, claims as the basis of the relief sought, that:
 

 “A. Tenant violated substantial obligation of his tenancy. B. Tenant committed and permits a nuisance in the use of the premises.”
 

 
 *187
 
 Plaintiff contended, -with reference to claim. A, that one of the substantial obligations of the rental contract was
 
 no pets
 
 — adults
 
 only,
 
 and, with reference to dluim B, that defendant committed and permitted a nuisance when he brought his baby to live in the apartment.
 

 In a proceeding in forcible entry and detainer no answer is necessary and here none was filed.
 

 Defendant claimed that there was no agreement with reference to “No pets — adults only” constituting a substantial obligation of the rental contract and further that, even if there was such an agreement, under the circumstances disclosed there was no violation of such obligation.
 

 As stated in the majority statement of facts the defendant and his wife rented the apartment in February 1945. In August 1945 defendant’s wife gave birth to a baby and thereafter the defendant, his wife and the baby continued to live in the apartment.
 

 With reference to the alleged agreement as to “No pets — adults only,” the record discloses that Clara Dietrich, rental agent for plaintiff, testified:
 

 “Q. At the time you executed that receipt, did you have a conversation with the gentleman? A. Yes.
 

 “Q. Will you tell the jury what he said and what you said? A. I asked if he had any pets or children and said that they were not allowed in the building.
 

 “Q. What did he say? A. He said he did not have children or pets.
 

 “Q. Did you have further talk with him?-A. No.”
 

 Marvin Court, the defendant, called as upon cross-examination, testified on that subject as follows:
 

 “Q. You understood that the suite was to be occupied by adults only? * * * A. Yes. * * *
 

 “Q. Did you have a talk with Mrs. Dietrich about the suite being occupied by adults only? A. There
 
 *188
 
 wasn’t any talk. I rented the apartment and paid her the rent."
 

 “Q. Didn’t Mrs. Dietrich say to you that the suite was to be occupied by adults only? A. Yes. My wife and I were adults.
 

 “Q. Was there talk about children? A. No, sir.
 

 “Q. Are you sure of that? A. Yes, sir.
 

 “Q. Did you inform Mrs. Dietrich you expected a child?
 
 *'* * A.
 
 No, sir.”
 

 The quoted testimony of Clara Dietrich and Marvin Court is all the testimony offered having reference to the rental agreement.
 

 In presenting his defense, defendant testified further :
 

 “Q. Describe what you observed and saw about the building? A. As I observed, I saw. a woman with a baby and she was practically there — living there and she was pregnant at that time; when Mrs. Dietrich asked the question about adults I told the truth. * * *
 

 “The court: Ladies of the jury, the statement with respect to conversation with Mrs. Dietrich will be stricken from the record, and the jury should disregard it.
 

 “Q. You went there and observed the lady with a baby? A. Yes.
 

 “Q. And you observed she was pregnant? A. Yes. * * *
 

 ‘ ‘ Q. I ask you if you know whether or not the mother of the baby was — or whether or not another baby was born to that woman?
 
 * * *
 

 “The court: Did you observe at this time, or after you moved in, whether other families had children? A. One family there was a child of four or five years and on the same floor I lived on there was a dog barked every time I walked along the hall and made quite a disturbance.
 

 
 *189
 
 “Q. Who else had a dog? A. I think Mr. Gynn himself lives there and had a dog, and I know —
 

 In addition to the above testimony the court admitted in evidence plaintiff’s exhibit No. 1 which was a copy of the rent receipt for the first month’s rent. Running diagonally across the receipt is the imprint of a rubber stamp in red letters, the legible portion reading:
 

 “Specific rental-
 

 “No pets — adults only.”
 

 No evidence was offered with respect to the claim that defendant committed or permitted a nuisance, other than hereinbefore noted. At the conclusion of all the evidence the court withdrew that claim from the consideration of the jury.
 

 In my view there is no room for controversy that, upon such state of the record, the court was correct in submitting the following issues to the jury:
 

 1. Was there any restriction as to “No pets — adults only” which became a part of the rental contract, and if so
 

 2. Did the fact that defendant’s wife gave birth tp a baby several months after the tenancy began, coupled with the fact that defendant, his wife and baby lived in the apartment thereafter, constitute the violation of* a substantial obligation of the rental contract.
 

 In view of the contradictory evidence, each of such issues constituted a question of fact for determination by the jury.
 

 A general verdict was returned in favor of defendant. As hereinbefore pointed out there is evidence in the record which if believed warranted the jury in finding in favor of defendant on either or both of those issues.
 

 The majority of the court has declared as a matter of law that there was an agreement that the apart
 
 *190
 
 ment should be occupied by
 
 adults only,
 
 that the defendant violated such agreement and that such violation constituted the violation of a substantial obligation.
 

 In so doing the court has invaded the province of the jury.
 

 Under this record reasonable minds could come to different conclusions upon the question as to whether the restriction “No pets — adults only” ever became a part of defendant’s rental agreement. Reasonable minds could arrive at different conclusions also upon the question whether the violation of such restriction, if made, was the violation of a substantial obligation of the rental contract, in view of the
 
 undisputed testimony
 
 that some other tenants in the building lived there with children and the further
 
 undisputed testimony
 
 that at least two of the tenants including the president of plaintiff company kept dogs in the premises.
 

 Ordinarily the owner of real property may surround the occupancy of such .property by others with such restrictions as he may see fit to impose and such owner may terminate a month-to-month tenancy at the end of any month with or without reason. However, the Price Administrator, under authority granted by the Emergency Price Control Act, has curtailed the right of the owner to terminate a month-to-month tenancy. So long as that act remains in effect the owner of real property is not free to terminate such a tenancy except in accordance with such administrator’s regulations.
 

 ' The jury having found that defendant was not guilty of any unlawful detention "of the property, the judgments below should be affirmed.
 

 Weygandt, C. J., concurs in the foregoing dissenting opinion.